UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| C.R.H. INDUSTRIAL WATER, LLC, *et al.*, | CASE NO. 1:23-cv-01805 |
| Plaintiffs, | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | |
| MICHAEL EIERMANN, *et al.*, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Before the Court is Defendants' motion to dismiss. (Doc. 23.) Plaintiffs opposed the motion (Doc. 28), and Defendants replied (Doc. 32.) For the reasons explained below, the motion to dismiss is GRANTED in part and DENIED in part.

I. **Background**

A. **Factual Allegations**

In this trade secrets case, C.R.H. Industrial Water, LLC (d/b/a Western Reserve) and C.R.H. Ohio, LTD claims Michael Eiermann, Andrew Bokovitz, and Perry Celaschi through Engineered H2O Solutions, LLC and M&M Water Processing Inc., misappropriated—and continue to misappropriate—proprietary and confidential information to unfairly compete.[1] (Doc. 1 at ¶ 3.) Eiermann founded Western Reserve in 2003. (*Id.* at ¶ 18.) Western Reserve specialized in delivering high-quality water treatment products and technologies to customers in

---

[1] C.R.H. Industrial Water, LLC and C.R.H. Ohio, LTD. will be referred to as "Western Reserve" or "Plaintiffs." Michael Eiermann, Andrew Bokovitz, and Perry Celaschi will be referred to individually as "Eiermann," "Bokovitz," or "Celaschi," and collectively as the "Individual Defendants." Engineered H2O Solutions, LLC and M&M Water Processing Inc. will be referred to individually as "Engineered H20 Solutions" or "M&M Water." References to "Defendants" will mean all individual and business defendants together.

the medical, food, and pharmaceutical industries, among others. (*Id.* at ¶ 20.) After nearly 16 years in business, Western Reserve filed for bankruptcy in April 2019. (*Id.* at ¶ 18.) C.R.H. Industrial Water, an affiliate of the largest water treatment company in the United States, purchased the assets of Western Reserve in bankruptcy in December 2020. (*Id.* at ¶¶ 9, 19.) Western Reserve then continued to operate. (*Id.* at ¶ 19.)

As part of the transition to new ownership, Western Reserve rehired certain employees from the previous iteration of the company. (*Id.*) Eiermann, Bokovitz, and Celaschi were among those rehired. (*Id.*) Western Reserve hired Eiermann to assist with sales. (*Id.* at ¶ 25.) Eiermann completed some of Western Reserve's pre-hire paperwork but did not sign an employment agreement with a non-disclosure, noncompete, or non-solicitation provision. (*Id.* at ¶ 24.) In January 2021, Western Reserve hired Bokovitz as a service technician. (*Id.* at ¶¶ 27–31.) At the same time, Western Reserve hired Celaschi as a field service engineer. (*Id.* at ¶¶ 32–35.) Unlike Eiermann, Bokovitz, and Celaschi signed an employment agreement which included restrictions on disclosure of information, competition, and solicitation. (*Id.* at ¶¶ 27, 38.)

Western Reserves' new relationship with Eiermann was tumultuous and short-lived. Eiermann quit in June 2021 after Western Reserve confronted him about his intention to start a new water treatment business that would compete with Western Reserve. (*Id.* at ¶ 50.) Throughout his employment, Western Reserve asked Eiermann to sign an employment agreement (with noncompete provisions), but Eiermann refused. (*Id.* at ¶ 45.) Western Reserve learned that Eiermann registered at least two companies with the Ohio Secretary of State while still employed by Western Reserve. (*Id.* at ¶¶ 44, 47.) Eiermann also tried to solicit Western Reserve employees to leave and start working for him at a new company. (*Id.* at ¶¶ 46, 48.)

2

After leaving Western Reserve, Eiermann founded Engineered H2O Solutions and began competing with Western Reserve. (*Id.* at ¶ 52.)

After Eiermann quit, he sued Western Reserve alleging nonpayment of wages. (*Id.* at ¶ 36.) In December 2022, the parties settled and entered a Release and Settlement Agreement ("Release"). (*Id.* at ¶ 37.) As part of the Release, Western Reserve paid Eiermann a sum of money to resolve the claims. (*Id.*) The release requires Eiermann to refrain from disparaging Western Reserve, requires Eiermann return all Western Reserve property, and prohibits Eiermann from divulging trade secrets. (*Id.*) Both parties released all claims that arose on or before the Release date, December 8, 2022. (*Id.*)

In April 2023, Bokovitz and Celaschi resigned from Western Reserve and began working at Engineered H2O Solutions with Eiermann. (*Id.* at ¶ 58.) Engineered H2O Solutions, through the Individual Defendants, began soliciting clients of Western Reserve. (*Id.* at ¶ 60.) Western Reserve alleges the Individual Defendants took, disclosed, and are now using its trade secrets at Engineered H2O Solutions. (*Id.* at ¶ 76.)

**B.   Procedural History**

From the above facts, Western Reserve filed a nine-count complaint. The claims are: violations of the Defend Trade Secrets Act ("DTSA") (Count One as to all Defendants); violations of the Ohio Uniform Trade Secrets Act ("OUTSA") (Count Two as to all Defendants); unfair competition (Count Three as to all Defendants); tortious interference with prospective business expectancies (Count Four as to all Defendants); tortious interference with a business relationship (Count Five as to all Defendants); civil conspiracy (Count Six as to all Defendants); breach of contract (Count Seven as to Bokovitz and Celaschi only); breach of contract (Count

Eight as to Eiermann only); and breach of faithless servant doctrine (Count Nine as to Bokovitz and Celaschi only). (*Id.* at ¶¶ 78–151.)

Defendants moved to dismiss the complaint. (Doc. 23.) Mainly, Defendants argue the DTSA and OUTSA claims should be dismissed for failure to state a claim under Rule 12(b)(6). (*Id.* at 138.)[2] Defendants move to dismiss the remaining claims for lack of jurisdiction. (*Id.* at 145.) Finally, Defendants alternatively argue the state-law claims should be dismissed as preempted by OUTSA. (*Id.* at 146.)

## II. Analysis

### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests whether the complaint meets this standard. To survive a Rule 12(b)(6) motion for failure to state a claim, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When courts evaluate whether a complaint makes out a plausible claim, they must accept all factual allegations as true. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (citing *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). Courts must also draw all reasonable inferences in favor of the plaintiff, and they must generally construe the complaint

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

4

in the light most favorable to the plaintiff. *Id.* But courts do not accept legal conclusions or other conclusory allegations as true. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)). And courts need not make unwarranted factual inferences. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

### B. Trade Secret Claims

Defendants move to dismiss Counts One and Two which allege misappropriation of trade secrets under the DTSA and OUTSA. (Doc. 23 at 138.) Defendants primarily argue the Complaint fails to include sufficient factual allegations to state a claim. (*Id.*) Defendants also argue, as it relates to Eiermann specifically, the trade secret claims are barred by release. (*Id.* at 144.)

To state a claim under the DTSA, a plaintiff must allege: "(1) the existence of a trade secret[;] (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret[.]" *In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, 2024 U.S. App. LEXIS 5077, *5–6 (6th Cir. Feb. 29, 2024) (quotation and citation omitted). To state a claim under OUTSA, a plaintiff must allege: "(1) the existence of a trade secret; (2) acquisition of a trade secret as a result of a confidential relationship or through improper means; and (3) an unauthorized use of the trade secret." *Novus Grp., LLC v. Prudential Fin., Inc.*, 74 F.4th 424, 427–28 (6th Cir. 2023) (citing *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 82 N.E.3d 1180, 1184 (Ohio Ct. App. 2017)). Courts consider DTSA and OUTSA claims together because the definition and requirements are generally the same. *See James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024) (considering DTSA and OUTSA claim together); *see also Sunjoy Indus. Grp., Ltd. v. Permasteel, Inc.*, No. 22-cv-1896, 2023 WL 406211, 2023 U.S. Dist. LEXIS 13257, at *20–21 (S.D. Ohio Jan. 25, 2023)

5

("Courts consider these state and federal law claims together because the definition and requirements of the OUTSA and DTSA are essentially the same.").

A "trade secret" is information the owner "has taken reasonable measures to keep . . . secret" that "'derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.'" *Neate*, 98 F.4th at 675 (quoting 18 U.S.C. § 1839(3)). "[A] trade-secrets plaintiff must 'define the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection . . . and to determine the fact of an appropriation.'" *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380–81 (6th Cir. 2022) (quoting Restatement (Third) of Unfair Competition § 39 cmt. d). In other words, a plaintiff must define the trade secrets with "reasonable particularity," meaning "particular enough as to separate the trade secret from matters of general knowledge in the trade or special knowledge of persons skilled in the trade." *Id.* at 381 (quotation and citation omitted); *see also AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 980 (6th Cir. 2021) ("A plaintiff is required to identify a trade secret with specificity to separate the secret from general knowledge."). "If a plaintiff effectively asserts that all information in or about its product is a trade secret, then it brings a case both too vague and too inclusive, and does not allow a jury to separate the trade secrets from the other information that goes into any product in the field." *Caudill Seed*, 53 F.4th at 381 (quotation and citation omitted); *see also Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 667 F.Supp.3d 590, 601 (N.D. Ohio 2023) ("one cannot claim as a trade secret an entire body of knowledge without articulating at least the boundaries within which the secret lies") (quotations and citations omitted).

6

On a motion to dismiss, courts generally find "so long as the plaintiff can put forth general categories of its trade secrets and provide the type of factual allegations . . . that allow for the reasonable inference that the defendants improperly disclosed some of those trade secrets . . . the plaintiff has done all that is required to survive a motion to dismiss." *Best Process Sol., Inc. v. Blue Phoenix Inashco USA, Inc.*, 569 F.Supp.3d 702, 714 (N.D. Ohio 2021) (quotations and citations omitted).

Misappropriation is the improper acquisition or improper disclosure or use of trade secrets. 18 U.S.C. § 1839(5). At the motion to dismiss stage, "[d]ismissal is appropriate where a plaintiff fails to articulate a theory of trade misappropriation and makes only 'naked assertions' devoid of 'factual enhancement.'" *Corp. Bertec v. Sparta Software Corp.*, No. 19-cv-4623, 2020 WL 2112162, 2020 U.S. Dist. LEXIS 78437, at *24 (S.D. Ohio May 4, 2020) (quoting *Exal. Corp. v. Roeslein & Assoc., Inc.*, 12-cv-1830, 2013 WL 6843022, 2013 U.S. Dist. LEXIS 180712, at *15 (N.D. Ohio Dec. 27, 2013)).

First, Defendants argue Western Reserve has not sufficiently pleaded what information is a trade secret. (Doc. 23 at 143.) Western Reserve disagrees and cites Paragraph 79 of the Complaint, which alleges:

> Western Reserve is the owner of certain valuable confidential business information and trade secrets including, but not limited to, project files, customer information, prospective customer information, vendor information, bid histories, pricing structures, rate calculations/information, corporate records, estimates, active and historical files across Western Reserve's offices, materials for affiliates of Western Reserve, and much more.

(Doc. 28 at 164.) The Court finds this allegation is sufficient at this stage. Defendants argue this allegation is vague. It is true some categories listed above may strain the definition of trade secret (*e.g.*, "corporate records"). But on a motion to dismiss, "various federal courts have agreed that plaintiffs' pleadings need not disclose in detail trade secrets that have been

7

misappropriated." *Church Mut. Ins. Co. v. Smith*, No. 14-cv-749, 2015 WL 3480656, 2015 U.S. Dist. LEXIS 70972, at *11 (W.D. Ky. June 2, 2015) (finding allegation of "contact information, rates, loss ratios, bid proposals, underwriting information, etc." sufficient to state a claim). This allegation sufficiently puts Defendants on notice what categories of information Western Reserve claims is a trade secret. Western Reserve will have to prove through discovery, with more specificity, this information qualifies as a trade secret.

Second, Defendants argue the Complaint does not describe any circumstances or facts about misappropriation. (*Id.* at 140.) Western Reserve argues it alleges a theory of misappropriation through acquisition and use. (Doc. 28 at 165.) The Complaint alleges Defendants accessed trade secrets while in Western Reserve's employ, took with them those trade secrets when they left Western Reserve, and are using them to compete against Western Reserve. (Doc. 1 at ¶¶ 78–86.) The Complaint sufficiently alleges a theory of misappropriation.

Defendants also complain some of Western Reserve's allegations are "upon information and belief." (Doc. 23 at 141.) But such allegations are not improper at this stage of the proceedings. *See* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d 2019) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible," and are even "a practical necessity."). In this Circuit, "pleading on information and belief is allowed 'where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Novus Grp., LLC v. Prudential Fin., Inc.*, No. 19-cv-208, 2019 WL 4452708, 2019 U.S. Dist. LEXIS 161270, at *23 (S.D. Ohio Sept. 17, 2019) (quoting *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447–48 (6th Cir. 2014)). The allegations made upon information and belief relate to matters within the exclusive possession of

8

Defendants or are allegations which are based on sufficient factual information that make the allegations plausible.

Next, Defendants argue it is equally possible they could compete and obtain customers because of their longstanding work in the water treatment industry. (Doc. 23 at 143.) For instance, because of Eiermann's experience in the field, it could be equally true that he poached customers using that experience and prior contacts rather than through any misappropriation of trade secrets. (*Id.*) The Court finds this argument without merit at this stage. On a motion to dismiss, the Court cannot weigh possible scenarios. Instead, it must take the allegations in the complaint as true and ask whether those allegations state a plausible claim. The Complaint sufficiently pleads allegations that Defendants used misappropriated trade secrets to unfairly compete. *See Pres. Partners, Inc. v. Sawmill Park Props., LLC*, 2022 U.S. Dist. LEXIS 237659, at *9 n.2 (S.D. Ohio Oct. 12, 2022) (dismissing claim where complaint only pleaded a "possible" claim, not a "plausible" one).[3]

Lastly, Eiermann argues he should be dismissed from this suit because the claims are barred by the Release. (Doc. 23 at 144.) Western Reserve argues its Complaint alleges Eiermann misappropriated trade secrets after December 2022, the date of the Release, continuing to this day. (Doc. 28 at 169.) Further, Western Reserve argues Eiermann violated the terms of the Release, giving rise to its breach of contract claim. (*Id.*) Because Western Reserve pleads misappropriation of trade secrets after the Release date, the claim is not barred by the Release.

---

[3] Because Western Reserve has pleaded a DTSA claim, the Court rejects Defendants' argument the Court should decline supplemental jurisdiction over the remaining state-law claims.

Moreover, Western Reserve alleges a breach of the Release, which may (or may not) allow Western Reserve to continue its pre-December 2022 trade secrets claim.[4]

    **C.    Preemption of Common Law Claims**

Defendants argue the Ohio common-law claims—Counts Three through Nine—are preempted by OUTSA. (Doc. 23 at 146.) Western Reserve's common-law claims include unfair competition (Count Three), tortious interference with prospective business expectations (Count Four), tortious interference with a business relationship (Count Five), civil conspiracy (Count Six), breach of contract (Counts Seven and Eight), and breach of the faithless servant doctrine (Count Nine).

OUTSA expressly "displace[s] conflicting tort, restitutionary, and other laws . . . providing civil remedies for misappropriation of a trade secret." R.C. § 1333.67(A). "[C]ourts analyzing whether OUTSA preempts a particular claim must look to whether that claim relies on the same operative facts that formed the basis for the party's trade secrets misappropriation claim." *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 414 (6th Cir. 2024) (citing *Stolle Mach. Co. LLC v. RAM Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015)). "[W]here the state-law claim has a factual basis independent from the facts establishing the OUTSA claim, the portion of the claim supported by an independent factual basis survives preemption." *Id.* (quotations omitted); *see also Stolle Mach. Co.*, 605 F. App'x at 484 ("The test to determine whether a state law claim is displaced by OUTSA is to determine whether the claims are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory

---

[4] In Defendants' motion to dismiss, contained within the trade secrets section, Defendants argue the Complaint fails to state tortious interference claims. (Doc. 23 at 141.) The Court does not reach this issue because, as discussed below, the tortious interference claims as pleaded are preempted by OUTSA.

claim for trade secret misappropriation.") (quotation and citation omitted). The "key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the Uniform Trade Secrets Act." *Hanneman Fam. Funeral Home and Crematorium v. Orians*, 235 N.E.3d 361, 367 (Ohio 2023) (citation omitted).

In general, "granting a motion to dismiss on the ground that a claim is preempted by OUTSA is inappropriate where it is 'unclear whether discovery would enable plaintiff to base its additional state law claims on facts different from those alleged in its trade secret claim.'" *ADSC Holdings, Inc. v. Damman*, No. 20-cv-2554, 2021 WL 4189724, 2021 U.S. Dist. LEXIS 196552, at *3 (N.D. Ohio Feb. 10, 2021) (quoting *Thermodyn Corp. v. 3M Co.*, 593 F.Supp.2d 972, 990 (N.D. Ohio 2008)).

Count Three for unfair competition alleges Defendants are maliciously targeting Western Reserve's employees to gain an unfair advantage and Defendants are using Western Reserve's confidential information to compete with Western Reserve. (Doc. 1 at ¶ 104.) To the extent this claim relates to the targeting of Western Reserve employees, it is not preempted by OUTSA. However, to the extent the claim relates to the use of confidential information to compete with Western Reserve, it is preempted because there is no independent factual basis separate and apart from the trade secret claim. No discovery will allow Western Reserve to demonstrate an independent basis for that aspect of its unfair competition claim. *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722, 732 (N.D. Ohio 1999) (dismissing as preempted unfair competition claim under Ohio law because the "claim relates to the misappropriation of proprietary information which is designed to be protected through the law of trade secrets"). Defendants' motion to dismiss Count Three is granted in part.

11

Counts Four and Five allege tortious interference claims.  (Doc. 1 at ¶ 111–26.)  The claims allege "Western Reserve has a valid business expectancy that it will continue to reap the benefits of its confidential and proprietary information by continuing to provide service to its customers, vendors, and clients, and under its contracts."  (*Id.* at ¶ 112.)  Western Reserve does not argue these claims have an independent factual basis separate from its trade secret claim.  Instead, the claims appear to be "drawn entirely" from the trade secret claim in that it is rooted in the improper acquisition and use of "confidential and proprietary information."  These claims are therefore preempted.  *See Campfield*, 91 F.4th at 415 (affirming judgment as a matter of law on tortious interference claim because plaintiff has "not alleged any independent facts to support its claims that go beyond misappropriation of trade secrets"); *Stolle Mach.*, 605 F. App'x at 485 (affirming dismissal of tortious interference claim as preempted by OUTSA where claim depended on whether misappropriated customer lists and other technical information were trade secrets).  Defendants' motion to dismiss Counts Four and Five is granted.

Count Six alleges Defendants "conspired and acted with intent of depriving Western Reserve of its property, confidential information, and trade secrets, intending to damage Western Reserve's business."  (Doc. 1 at ¶ 128.)  A conspiracy claim requires proof of an underlying unlawful act.  When an unlawful act supporting a civil conspiracy claim is misappropriation of trade secrets, the conspiracy claim is preempted by OUTSA.  *Campfield*, 91 F.4th at 415 (dismissing civil conspiracy claim where complaint did not allege independent facts from misappropriation of trade secrets); *Stolle Mach.*, 605 F. App'x at 486 (dismissing civil conspiracy claim where underlying unlawful act was misappropriation of trade secrets); *Murray Energy Holdings Co. v. Bloomberg, L.P.*, No. 15-cv-2845, 2016 WL 3355456, 2016 U.S. Dist. LEXIS 79199, at *33–34 (S.D. Ohio June 17, 2016) (dismissing conspiracy claim where facts mirror

misappropriation of trade secret allegations). Western Reserve alleges Defendants conspired to misappropriate its trade secrets. The conspiracy claim, therefore, is preempted. Defendants' motion to dismiss Count Six is granted.

Count Seven alleges Bokovitz and Celaschi breached their employment agreements. (Doc. 1 at ¶ 134.) Count Eight alleges Eiermann breached the Release by disparaging Western Reserve and by using and disclosing trade secret information. (*Id.* at ¶ 141.) The Sixth Circuit recently held that R.C. § 1333.67 does not preempt breach of contract claims. *See Metron Nutraceuticals, LLC v. Cook*, No. 23-3596, 2024 WL 3877388, 2024 U.S. App. LEXIS 21200, at *23–24 (6th Cir. Aug. 20, 2024) (holding that Ohio's "preemption provision contains certain exemptions—it 'do[es] not affect,' *inter alia*, 'contractual remedies, whether or not based on misappropriation of a trade secret.'") (quoting R.C. § 1333.67(B)(1)). Accordingly, these breach of contract claims are not preempted. Additionally, these breach of contract claims are premised, at least in part, on facts independent of the alleged misappropriation of trade secrets.

Count Nine alleges breach of the faithless servant doctrine. (Doc. 1 at ¶ 149.) The claim alleges Bokovitz and Celaschi "conspired with Eiermann to work for a water filtration company in direct competition with Western Reserve, and used their access to Western Reserve's confidential information, including customer and prospective customer lists, with the intent to poach them." (*Id.*) The faithless servant doctrine is a subset of Ohio's fiduciary duty law. *Cheryl & Co. v. Krueger*, 536 F.Supp.3d 182, 212 (S.D. Ohio 2021) (citing *Roberto v. Brown Cnty. Gen. Hosp.*, 571 N.E.2d 467, 469 (Ohio Ct. App. 1989)). Like other common law causes of action, OUTSA preempts breach of fiduciary duty claims if there is no independent factual basis for the claim. *See Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F.Supp.2d 702, 724 (N.D. Ohio 2009) (dismissing breach of fiduciary duty claim where "the

13

claim is solely dependent upon misappropriation-of-trade-secret facts"). This claim turns on Defendants' alleged misappropriation of trade secrets. The claim alleges Bokovitz and Celaschi breached their fiduciary duties by engaging in misappropriation of trade secrets. The claim is therefore preempted. *See Fed. Mach. & Equip. Co. v. Tousey*, No. 21-cv-1422, 2024 WL 4216581, 2024 U.S. Dist. LEXIS 167441, at *16 (N.D. Ohio Aug. 30, 2024) (dismissing breach of fiduciary duty claim in part where claim alleged defendant breached fiduciary duty by engaging in misappropriation of trade secrets). Defendants' motion to dismiss Count Nine is granted.

### III.     Conclusion

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Count Three is DISMISSED in part. Counts Four, Five, Six, and Nine are DISMISSED.

**IT IS SO ORDERED.**

Date:   November 21, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE