**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| C.R.H. INDUSTRIAL WATER, LLC, *et al.*, | ) ) ) | CASE NO. 1:23-CV-1805 |
| Plaintiffs, | ) ) | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| v. | ) ) | |
| MICHAEL EIERMANN, *et al.*, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This trade secrets case was dismissed with prejudice in March 2025 pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, after a lengthy mediation process that led to a settlement. (Order, ECF No. 62.) The parties had agreed that the Court would retain jurisdiction over the terms of their settlement agreement (*see* Stipulated Notice, ECF No. 61), and further specifically agreed that I would retain jurisdiction to interpret and enforce the terms of the settlement agreement if any dispute arose. (*See* Minutes of Proceedings [non-document], Jan. 27, 2025.)

The case is now before the Court for the determination of attorney fees, costs, and interest relative to a consent judgment entry after the defendants breached the settlement agreement that ended their litigation. (Mem. Opinion and Order, ECF No. 74.)

The factual and procedural background of this case is set forth in detail in the Court's Memorandum Opinion and Order of December 10, 2025. (ECF No. 74, PageID# 674–76.) It need not be repeated in detail here.

After an evidentiary hearing on October 27, 2025, the Court determined that Plaintiffs C.R.H. Industrial Water, LLC and C.R.H. Ohio, LTD. ("Plaintiffs") are entitled to the entry of a

consent judgment against Defendants Michael Eiermann, Andrew Bokovitz, Perry Celaschi, and Engineered H2O Solutions, LLC ("Defendants")—the remedy provided in their settlement agreement for a breach. (*Id.*; *see also* Consent Judgment, ECF No. 63-1.)

Specifically, the Court set forth the following:

> Plaintiffs shall have and recover judgment against Defendants in the total amount of Sixty-Eight Thousand Dollars ($68,000) minus any payments made pursuant to the Settlement Agreement and Waiver and Release between the parties plus Ten Thousand Dollars ($10,000.00) plus interest at the statutory rate, court costs and reasonable attorney fees.

(ECF No. 74, PageID# 684.)

The Court requested briefing from the parties regarding attorney fees and ordered that the parties set forth the amount that has already been paid pursuant to the settlement agreement. (*Id.*)

On December 24, 2025, the plaintiffs filed a motion for attorney fees, interest, and costs (ECF No. 75), supported by: (1) an affidavit from attorney Thomas Feher as an expert (ECF No. 75-1); (2) an affidavit from attorney John Mitchell (ECF No. 75-2); (3) redacted billing entries for the months of May through December 2025 (ECF Nos. 75-3, 75-4, 75-5, 75-6, 75-7, 75-8, 75-9, and 75-10); (4) invoices from the company Veritext (ECF No. 75-11); and (5) food, lodging, and rideshare confirmation emails, and printed electronic driving directions related to the travel of attorney Lauren Kemp (ECF No. 75-12).

On January 19, 2026, the defendants filed a brief in opposition to the motion. (ECF No. 77.) On January 26, 2026, the plaintiffs filed a reply brief in support of their motion. (ECF No. 78.)

The Court then ordered the plaintiffs to submit unredacted copies of their billing entries for the Court's *in camera* review. (Order [non-document], Feb. 13, 2026.) The plaintiffs submitted these records, and the Court has reviewed them thoroughly.

This Memorandum Opinion and Order follows.

For the reasons that follow, the Court GRANTS IN PART the motion for attorney fees, interest, and costs (ECF No. 75.) The Court awards reasonable attorney fees in the amount of $**62,316.50**. The Court awards reasonable costs and expenses in the amount of **$9,332.73**. And the Court awards pre- and postjudgment interest at the statutory rates, although less prejudgment interest than the Plaintiffs request. The motion is otherwise DENIED.

**The plaintiffs are ordered to file a notice** on or before March 5, 2026, stating whether the defendants have made additional payments under the settlement agreement since the filing of their reply brief and, if so, the amount of the principal balance that is still outstanding. A final judgment entry will promptly follow that notice.

## II.     LAW AND ANALYSIS

### A.     Attorney Fees

Under Ohio law, a party who successfully enforces a settlement agreement in court may recover its reasonable attorney fees and expenses incurred in enforcing the settlement, as compensatory damages. *E.g.*, *Rohrer Corp. v. Dane Elec. Corp. U.S.A.*, 482 F. App'x 113, 117 (6th Cir. 2012). Here, the parties' settlement agreement also expressly provided for the recovery of attorney fees and costs:

> Fee Shifting.  The Parties agree that the prevailing Party in any action relating to or arising out of this Agreement will be awarded its reasonable attorneys' fees and costs incurred as a result of such proceeding.

Settlement Agreement at 4, Oct. 27, 2025 Hrg. Ex. 7; *see also Marten Transp., Ltd. v. Logistical Advantage Corp.*, No. 1:22-cv-1118, 2023 WL 5277765, at *5 (N.D. Ohio June 14, 2023) (noting that the existence of a contract that provides for fee-shifting is an independent basis to award fees).

And the parties' negotiated consent judgment entry also provides for the award of fees, costs, and interest:

> It is therefore ORDERED, ADJUDGED AND DECREED that Plaintiffs shall have and recover judgment against Defendants in the total amount of

3

Sixty-Eight Thousand Dollars ($68,000) minus any payments made pursuant to the Settlement Agreement and Waiver and Release between the parties plus Ten Thousand Dollars ($10,000.00) plus interest at the statutory rate, court costs and reasonable attorney fees in the event any [Defendant][1] violates any term of the Settlement Agreement and Waiver and Release. Reasonable attorneys' fees shall only be awarded for attorney fees incurred in connection seeking enforcement of the Settlement Agreement dated March 18, 2025.

(Consent Judgment Entry, ECF No. 63-1.)

Indeed, Defendants do not seem to dispute that—in light of the Court's finding of a material breach—the Plaintiffs are entitled to some award of attorney fees. Rather, the dispute centers on what a reasonable award is here.

Plaintiffs request $82,518.75. (Reply Br. at 6, ECF No. 78, PageID# 776.) This figure includes:

- $77,518.75 for work performed between May and December 2025 to investigate and litigate the issue of Defendants' breach; and

- $5,000 for work performed in drafting the reply brief in support of their fee application.

(*See* Mot. Att'y Fees at 2, ECF No. 75, PageID# 687; Reply Br. at 6, ECF No. 78, PageID# 776.)

Before turning to Defendants' position, the Court notes that Plaintiffs' first request seems to include a relatively small mathematical error. Mr. Mitchell avers—and the billing records substantiate—that he and the other professionals from his firm billed and collected from Plaintiffs:

- $7,023.75 in May;

- $5,406.25 in June;

- $25,103.75 in July;

---

[1] Plaintiffs corrected a scrivener's error in the original consent judgment entry before filing it; the parties had mistakenly written "Plaintiff" instead of "Defendant" here. The Defendants have not contested that this was an inadvertent drafting error.

- $10,890.00 in August;

- $6,448.75 in September;

- $16,550.00 in October; and

- $118.75 in November.

(Mitchell Aff., ECF No. 75-2, PageID# 712–13; Billing Records, ECF Nos. 75-3 through 75-10.)

Additionally, Mr. Mitchell avers—and the records substantiate—that his firm had earned (though not yet billed) $5,805 for the month of December, up to the date Plaintiffs filed their motion for fees. (PageID# 713 & 722.)

These amounts total only $77,346.25. The difference between these figures, at only $172, could reasonably be considered immaterial. But the Court will use the latter figure and consider Plaintiffs' request to be for a total of **$82,346.25** in fees.

Defendants do not suggest an alternative fee calculation, but they argue that Plaintiffs' fees are unreasonable. They point to "numerous issues" with the request, which at that time did not include fees attributable to the reply brief. (Opp'n Br., ECF No. 77, PageID# 765.) First, Defendants argue that "the quantity of pleadings in term of number of filings" and the "complexity/volume" of this part of the litigation were "minimal." (*Id.*) Defendants point specifically to 7.25 hours billed leading up to the filing of the Consent Judgment entry. (*Id.*, PageID# 767–68.) Next, Defendants argue that there was unreasonable redundancy in the Plaintiffs' attorneys' staffing of the case. (*Id.*, PageID# 765–66.) They respectfully question the necessity of Ms. Kemp's travel for and attendance at the evidentiary hearing, at which she did not examine a witness or present argument. (*Id.*, PageID# 766–67.) They point out, accurately, that the July 2025 chambers conference

5

and the October 2025 evidentiary hearing involved less than a day of total "in court time";[2] they further argue that allowing "every minute for every attorney to be compensated" would be "the definition of redundancy." (*Id.*) Defendants argue that it would be unreasonable to award fees and costs incurred to subpoena witnesses that Plaintiffs never ended up calling to testify. (*Id.*, PageID# 768.) They take issue with the cost of the expert report. (*Id.*) And finally, they point out that the amount of fees requested dwarf the damages actually at stake in the litigation. (*Id.*, PageID# 769.)

In reply, the Plaintiffs' counsel insists that their requested fees are "commensurate with seven[] months of work" investigating and litigating the breach and that the use of Ms. Kemp— an associate attorney—for much of the work in the case resulted in efficient staffing. (Reply at 3– 4, ECF No. 78, PageID# 773–74.) Plaintiffs point out that they succeeded in proving a material breach. (*Id.* at 4, PageID# 774.) They further state that Plaintiffs had paid all the attorneys' fees sought. (*Id.*) They argue that their work sending subpoenas to witnesses from outside businesses was necessary and reasonable, even if none of those witnesses were ultimately called. (*Id.*) And they contend that Defendants were fully aware that breaching the settlement agreement would result in the assessment of attorney fees, costs, and interest. (*Id.* at 5, PageID# 775.)

A trial court has discretion in determining the amount of fees to award, and the court's primary concern is to award an amount that is reasonable. *E.g.*, *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)); *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014). A reasonable fee is "adequate to attract competent counsel," but does not

---

[2] The Court notes that the docket reflects that the evidentiary hearing involved four hours of time in court. (Minutes of Proceedings, Oct. 27, 2025.) But the transcript reflects that—inclusive of breaks—the hearing lasted from 9:10 a.m. to 2:33 p.m. (or a little less than five and a half hours).

produce a "windfall" to attorneys. *See, e.g.*, *Reed*, 179 F.3d at 471 (citing *Blum*, 465 U.S. at 893–94).

The starting point in determining a reasonable fee is to calculate what is called the "lodestar," by multiplying the number of hours reasonably expended by a reasonable hourly rate. *E.g.*, *Rohrer Corp. v. Dane Elec.*, No. 1:10-CV-958, 2012 WL 3648904, at *2 (N.D. Ohio Aug. 23, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking attorney fees bears the burden of proving the reasonableness of the hours and the rates claimed. *Id.* Parties are not entitled to recover fees for "'hours that are excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434.

Here, plaintiffs' counsel's hourly rates are:

- $690 for Mr. Mitchell, who is a partner at the law firm of Taft Stettinius & Hollister LLP ("Taft") with 29 years of legal experience. (Mitchell Aff., ECF No. 75-2, PageID# 711–12.)

- $475 for Ms. Kemp, who was an associate at Taft during the relevant period and who has 10 years of legal experience. (*Id.* at PageID# 712.)

- $330 for Mr. Jones, a paralegal at Taft whose experience is not further described. (*See id.*)

Plaintiff's expert, Thomas Feher—a senior member of the Office of General Counsel at the law firm Thompson Hine who has been practicing law since 1987—opined that these hourly rates are reasonable and comport with Rule 1.5 of the Ohio Rules of Professional Conduct. (Feher Aff., ECF No. 75-1, PageID# 694, 699–702.) Mr. Feher did not specifically address the hourly rate for Mr. Jones.

Defendants seemingly concede the reasonableness of the attorneys' hourly rates. (*See* Opp'n Br., ECF No. 77, PageID# 766–67.) Specifically, Defendants write that their opposition was "in no way an attack or disparagement of Ms. Kemp's . . . qualification for her billable rate," "[n]or

7

is it an attack of the billing by Mr. Mitchell and Ms. Kemp to their client." (*Id.*) Defendants do not address Mr. Jones's rate.

Having independently reviewed these rates and the expert report, and with no opposition from Defendants on this issue, the Court finds the attorneys' rates to be reasonable. The Court has considered the prevailing market rate in the Northern District of Ohio. *See Adcock-Ladd v. Sec'y of Transportation*, 227 F.3d 343, 350 (6th Cir. 2000). Mr. Fehrer opined that Mr. Mitchell's rate is squarely in the middle of the range for a Cleveland litigation partner as reported in the Wolters Kluwer *ELM Solutions* Real Rate Report and is slightly below the normal billing rate of a partner with his experience as reflected in the PricewaterhouseCoopers Revenue Management Report ("PwC Report"). (Feher Aff. at 7–8, ECF No. 75-1, PageID# 700–01.) Mr. Feher further opined that Ms. Kemp's rate is slightly below the average rate billed by associates with one year less practice experience, according to the PwC Report. (*Id.* at 8, PageID# 701.) The Court has also considered the parties' submissions and its own knowledge and experience in concluding that these rates are reasonable. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 1:08 CV 605, 2010 WL 1751995, *3 (N.D. Ohio Apr. 30, 2010) (citing *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F.Supp.2d 958, 965 (N.D. Ohio 2007); *see also Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefit Programs*, No. 2:13-CV-00357, 2016 WL 223717, at *2 (S.D. Ohio Jan. 19, 2016).

The Court turns next to a consideration of Mr. Jones's paralegal rate. In the absence of any meaningful evidence substantiating that Mr. Jones's rate is reasonable, the Court finds that an accurate benchmark for determining reasonable paralegal hourly rates in this case is the Ohio State Bar Association's publication "The Economics of Law Practice in Ohio 2024." Federal district courts in Ohio routinely rely on the OSBA's economics survey report for calculating fee awards.

*See Great Lakes Packers, Inc. v. P.K. Produce, Inc.*, Nos. 1:18cv2754 and 1:19cv1673, 2024 WL 6985554, at *10 (N.D. Ohio Feb. 20, 2024) (collecting cases).

In the OSBA's 2024 report, the median hourly billing rate for a paralegal in 2023 was $150. The ninety-fifth percentile rate for paralegals in the Cleveland region was $172. In the Akron, Canton, and Youngstown regions, the ninety-fifth percentile was $181. In the Toledo region, the ninety-fifth percentile was $154. Rates increased with the amount of experience a paralegal had, but the Court has no competent evidence regarding Mr. Jones's experience as a paralegal.

The Court therefore finds that Mr. Jones's hourly rate is higher than the prevailing market rate within the Northern District of Ohio. Even assuming that Mr. Jones has 10 years of experience, most paralegals in the Cleveland area with that amount of experience are billed at $95 to $174 per hour. Less than ten percent are billed at $195 or more. That percentage rises to fifteen percent in the Toledo area and in the Akron, Canton, and Youngstown area, but the majority of paralegals in those areas are still billed at $95 to $174 per hour.

The Court determines that a reasonable hourly rate for Mr. Jones's work is $130 per hour, which is squarely within the range of paralegal rates for this district as reported by the OSBA and consistent with the typical hourly rates awarded for paralegals in this district. *See Great Lakes Packers, Inc.*, 2024 WL 6985554, at *12 (approving a rate of $105 per hour for paralegal work performed in 2021); *Renouf v. Aegis Relocation Company Corp.*, 641 F. Supp.3d 439, 451 (N.D. Ohio 2022) (noting in 2022 that typical hourly rates for paralegals in this district run between $100 and $130 per hour); *Noco Company v. MacCalabur Investments, LLC*, No. 1:21-cv-2173, 2022 WL 2870900, at *2 (N.D. Ohio July 21, 2022) (approving fees for paralegal work at $100 and $125 per hour in 2022).

Accordingly, the Court finds that a reasonable hourly rate for the plaintiffs' legal team is: **$690** for Mr. Mitchell, **$475** for Ms. Kemp, and **$130** for Mr. Jones.

The Court next considers whether the plaintiffs proved the reasonableness of the hours claimed.

Before addressing Defendants' specific arguments about the reasonableness of the work performed on the case, the Court considers two broader issues identified in Mr. Feher's affidavit. In reviewing the plaintiffs' attorneys' billing records, Mr. Feher identified "several entries" where Plaintiffs' counsel block-billed[3] their time. (Feher Aff. at 4 n.1, ECF No. 75-1, PageID# 697.) Mr. Feher also noted that the attorneys billed in minimum increments of fifteen minutes (0.25 hours), as opposed to six minutes (0.1 hours). (*Id.* at 4, PageID# 697.) Mr. Feher averred that block-billing and billing in 0.25 increments are "less common practices" among law firms. (*Id.*) But he opined that neither "made a material difference in the overall reasonableness" of the fees. (*Id.*)

Attorneys who seek fees must "maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014) (citation and quotation marks omitted). But an attorney is "'not required to record in great detail how each minute of his time was expended.'" *Id.* (quoting *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007); *see also Hensley*, 461 U.S. at 437 n.12 (1983) (stating that, at the least, "counsel should identify the general subject matter of his time expenditures").

Regarding block-billing, the Sixth Circuit has held that if the description of the work performed is adequate, block-billing can be sufficient. *Smith*, 592 F. App'x at 371.

---

[3] "Block-billing" is a timekeeping method in which a lawyer enters the total daily time they spent working on a case, rather than separately itemizing the time they spent on individual tasks. *E.g.*, *Benoist v. Titan Med. Mfg., LLC*, No. 2:19-cv-2704, 2021 WL 4477084, at *3 (W.D. Tenn. Sept. 29, 2021).

Here, the Court has conducted an *in camera* review of counsel's unredacted billing entries. The block-billing is far more extensive than "several entries"; indeed, the entries are almost entirely block-billed. But overall, and read together in context, the entries sufficiently describe the work performed, the time spent on individual tasks, and by whom, such that the Court can adequately consider the reasonableness of each entry. *See Rohaley and Son Automotive, Inc. v. Travelers Casualty Ins. Company of Am.*, No. 1:20-cv-2700, 2022 WL 18863788, at *3 (N.D. Ohio Nov. 21, 2022), *report and recommendation adopted*, 2024 WL 4023101 (N.D. Ohio Sept. 3, 2024).

But the minimum billing increment used in this case is a thornier issue. Deciding whether quarter-hour billing is reasonable in a given case is a matter within the trial court's discretion. *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013).

Here, the Court is mindful that the general practice in this district is to bill in six-minute increments. And it has been that way for a long time. *See Reed v. Rhodes*, 934 F. Supp. 1492, 1520 (N.D. Ohio 1996) (noting, 30 years ago, that the "general practice in the Cleveland legal community" was to bill in six-minute increments). Courts in this district have at times viewed quarter-hour billing with disfavor. *E.g.*, *Corbis Corp. v. Starr*, 719 F. Supp.2d 843, 845 n.1 (N.D. Ohio 2010). The concern with billing in larger increments is that the practice can lead to overbilling. *E.g.*, *Yellowbook Inc.*, 708 F.3d at 849.

The Court is confident, after carefully reviewing the time entries, that this is not a case where a firm used quarter-hour increments to intentionally pad a bill. In multiple instances, Plaintiffs' attorneys gathered smaller tasks together under the same quarter-hour entry. For example, Mr. Mitchell billed a single quarter-hour entry on June 13, 2025, that included multiple emails with

11

Ms. Kemp, a conference call with opposing counsel, and a post-call conference with Ms. Kemp. ("Exhibit 2 – June 2025 Fees," ECF No. 75-4.)

That said, it is equally clear that the practice of quarter-hour billing had the overall practical effect of overbilling here. For instance, Ms. Kemp reported spending fifteen minutes reviewing the Court's five-sentence minute entry from the October 27, 2025 evidentiary hearing. (*See* "Exhibit 6 – October 2025 Fees," ECF No. 75-8; *see also* Minutes of proceedings [non-document], Oct. 28, 2025.) Mr. Mitchell reported spending fifteen minutes reviewing a one-page motion to continue. (*See* "Exhibit 5 – September 2025 Fees," ECF No. 75-7, *see also* Mot. Continue, ECF No. 72.)

Additionally, there are several instances where Mr. Mitchell documented the time spent on individual tasks within a block-billed entry and where the quarter-hour-billed entry charges more time. On December 10, 2025, for example, Mr. Mitchell reported performing two tasks that each took 12 minutes (0.2 hours each), but these tasks were billed as though Mr. Mitchell spent a half hour on the tasks (0.5 hours). ("Exhibit 8 – December 2025 Fees," ECF No. 75-10.) On December 13, 2025, a task taking Mr. Mitchell six minutes (0.1) was billed as though it took fifteen minutes (0.25). (*Id.*) And the same happened on December 19, 2025. (*Id.*)

The Court also notes that there are more than 20 quarter-hour entries for time associated with only emails or "correspondence." There are around seven quarter-hour entries for time associated with internal conferences between Mr. Mitchell and Ms. Kemp, including an entry wherein the two discussed only a joint motion to continue the evidentiary hearing (August 14, 2025 billing entry). The compounding effect of the quarter-hour billing becomes more apparent in considering the entries that follow that conference.

There is a quarter-hour entry for a phone call between Ms. Kemp and defense counsel regarding their availability for the rescheduled hearing (August 15, 2025 billing entry). There is a 45 minute entry for time that included: (1) a call with the courtroom deputy regarding the unopposed motion to continue; (2) reviewing the minute entry moving the hearing; and (3) an internal conference between Ms. Kemp and Mr. Mitchell "regarding same." (August 22, 2025 billing entry).

These are just a few examples, included to support the Court's conclusion, after a careful review, that quarter-hour billing resulted in overbilling in this case. It is clear that time entries were rounded up, not down. *Compare D.S. v. Knox County, Tennessee*, No. 3:20-CV-240-CEA-DCP, 2022 WL 1284234 (E.D. Tenn. Feb. 3, 2022) (no reduction warranted for quarter-hour billing where software kept track of time and time was rounded down, not up), *report and recommendation adopted as modified*, 2022 WL 885851 (E.D. Tenn. Mar. 25, 2022) (agreeing with the Magistrate Judge that no reduction was warranted for quarter-hour billing).

The Court therefore finds that a reduction must be made to the number of hours billed to arrive at a reasonable fee. *See Stanley v. Macomb County*, No. 19-11589, 2024 WL 95673, *7 (E.D. Mich. Jan. 8, 2024) (reduction warranted where quarter-hour entries were billed for reading emails and reviewing electronic notifications generated by docket management program). The question remains how large a reduction to make.

Mr. Feher opined that the quarter-hour billing here "yields an immaterial difference in the overall reasonableness of the fee." (Feher Aff. at 4 n.3, ECF No. 75-1, PageID# 698.) He arrived at that conclusion by converting every 0.25 entry into a 0.1 entry, and by converting every 1.75 entry into a 1.6 entry, which he said results in "a roughly 5.4% reduction of total time." He does

not explain why the logic of reducing each entry by 0.15 hours would not extend to other billed increments (0.5, for instance, or 2.0).

The Sixth Circuit has held that quarter-hour billing cannot merit a reduction greater than 60 percent relative to tenth-of-an-hour billing. *Yellowbook Inc.*, 708 F.3d at 849. And the Sixth Circuit further cautions that "in most cases district courts should apply much lower percentage reductions." *Id.*; *see also Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 549 (6th Cir. 2012) (finding no abuse of discretion in a reduction of 7.5 percent). The Sixth Circuit has affirmed a reduction of up to 35 percent where quarter-hour billing—combined with a host of other deficiencies—was found in a fee application. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575–76 (6th Cir. 2019); *see also Sevy v. Barach*, No. 17-13789, 2022 WL 4234951, at *8 (E.D. Mich. Sept. 14, 2022) (applying a 35 percent reduction under similar circumstances). The purpose of reducing fees under these circumstances is to counter overbilling, not to punish an attorney's failure to use tenth-of-an-hour billing. *Yellowbook, Inc.*, 708 F.3d at 849.

District courts in this circuit reduce fees for this issue in at least two ways. Some will apply an across-the-board percentage reduction. *See, e.g.*, *Sevy*, 2022 WL 4234951. Others will reduce 0.25 entries by 0.15 to reflect tenth-of-an-hour billing. *See, e.g.*, *H.D.V.-Greektown v. City of Detroit*, 2017 WL 9470887, *7 (E.D. Mich. Sept. 28, 2017).

The Sixth Circuit's instruction that "lengthy or whole-hour tasks warrant little or no reduction"—*Yellowbook, Inc.* at 849 n.4—seems to suggest that an entry-by-entry review is more appropriate, at least where it can be done feasibly.

The hours the plaintiffs request are as follows:

- 91.75 hours for Ms. Kemp;

14

- 47.5 hours for Mr. Mitchell;[4] and

- 3 hours for Mr. Jones.

For the reasons discussed further below, the Court is reducing Ms. Kemp's time by five hours, attributed to travel time between Columbus and Cleveland for the July hearing. That brings Ms. Kemp's request to 86.75 hours.

The Court finds that a reasonable approach is to reduce the quarter-hour-billed entries by a percentage that decreases with the length of the work performed: 0.25 entries will be reduced to 0.1 (a reduction of 60%); 0.5 entries will be reduced to 0.3 (a reduction of 40%); 0.75 entries will be reduced to 0.6 (a reduction of 20%); and 1.0 entries will be reduced to 0.8 (a reduction of 20%). This has the effect of discounting the numerous 0.25 entries significantly, while leaving longer entries largely untouched. *See Yellowbook, Inc.* at 849 n.4. For instance, Mr. Mitchell's and Ms. Kemp's five-hour entries attributed the July hearing are reduced to 4.8 hours each, a reduction of only four percent.

Additionally, the Court will not reduce Mr. Mitchell's entries for December 11 and 12, because the entries document, in six-hour increments, the time spent on each task and substantiate that these entries were not rounded up. Finally, the Court will reduce Mr. Mitchell's December 10 entry only to 0.4, again because he documented the time spent on each task in six-minute increments.

---

[4] Mr. Feher calculated Mr. Mitchell's total hours at 47.75 (Feher Aff. at 5, ECF No. 75-1, PageID# 698.) The difference between these calculations seems to stem from the August 2025 billing entries. Mr. Feher appears to have used the amounts included in the "Orig Hrs" column for this month, as opposed to the "Rev Hrs" column (which he used in every other month). The former number seems to represent hours as entered, while the latter represents the amount actually billed. It seems that Plaintiffs intended to use the amount actually billed in their fee application, and that is the number the Court also uses.

After applying these reductions to mitigate the overbilling caused by quarter-hour billing, the Court arrives at the following figures:

- 65.1 hours for Ms. Kemp;

- 37.8 hours for Mr. Mitchell; and

- 2.4 hours for Mr. Jones.[5]

Expressed as a percentage, the Court's reductions amount to a 25 percent reduction to Ms. Kemp's hours and a 20 percent reduction to Mr. Mitchell's and Mr. Jones's hours. The Court finds these amounts reasonable for the case, and further notes that they reflect the relative balance of workload between the professionals (and therefore the relative share of the overbilling) and are well within the range courts have applied to correct overbilling from quarter-hour billing. *See Bench Billboard Co.*, 499 F. App'x at 549 (7.5 percent); *Hubbell*, 933 F.3d at 575–76 (35 percent).

Having addressed block-billing and quarter-hour billing, the Court turns to a consideration of Defendants' arguments on staffing, complexity, redundancy, and on the work to issue subpoenas.

---

[5] To assist the parties with checking the math, the Court will further set forth its calculation by month:

- May 2025: Ms. Kemp, 8.25 hours reduced to 6.4 hours. | Mr. Mitchell, 4.5 hours reduced to 3 hours.

- June 2025: Ms. Kemp, 7.75 hours reduced to 6 hours. | Mr. Mitchell, 2.5 hours reduced to 1.7 hours.

- July 2025: Ms. Kemp, 20.25 hours (not including the disallowed travel entries) reduced to 16.8 hours. | Mr. Mitchell, 19 hours reduced to 16 hours.

- August 2025: Ms. Kemp, 15 hours reduced to 12.5 hours. | Mr. Mitchell, 4.5 hours reduced to 3 hours. | Mr. Jones, 2 hours reduced to 1.6 hours.

- September 2025: Ms. Kemp, 9.25 hours reduced to 7 hours. | Mr. Mitchell, 2.5 hours reduced to 1.2 hours. | Mr. Jones, 1 hour reduced to 0.8 hours.

- October 2025: Ms. Kemp, 18.5 hours reduced to 17.1 hours. | Mr. Mitchell, 11.25 hours reduced to 10.4 hours.

- November 2025: Ms. Kemp. 0.25 hours reduced to 0.1 hours.

- December 2025: Ms. Kemp, 7.5 hours reduced to 6.2 hours. | Mr. Mitchell, 3.25 hours reduced to 2.5 hours.

With one exception, the Court disagrees with Defendants that the hours requested were unreasonable. While the number of substantive filings related to the breach was small (*see* Notice, ECF No. 63; Joint Status Report, ECF No. 67; Mot. Att'y Fees, ECF No. 75; Reply, ECF No. 78), the Court cannot agree that this was a "minimally" complex case. As an initial matter, the Court is mindful that counsel's work was necessary in the first place because Defendants breached the settlement agreement by failing to maintain a complete communication log as required. The Court also notes that Plaintiffs had failed to attend several required bimonthly conferences regarding the defendants' non-solicitation obligations. While counsel's absence from the meetings was due to significant family obligations, in the context of the resulting silence, and without a complete picture of the Defendants' communications with potential customers, it is not unreasonable that Plaintiffs' counsel spent a significant amount of time investigating the extent of the breach and confirming the details of Mr. Eiermann's business with Plaintiffs' customers.

Having reviewed counsel's billing entries *in camera*, the Court finds that each entry relates to work performed to investigate the Defendants' breach of the settlement agreement and to litigate that breach after Defendants contested the filing of the consent judgment. That litigation involved preparing for and conducting an evidentiary hearing with multiple witnesses. And now it has involved litigating a contested fee application.

The Court, having already reduced the number of hours billed as set forth above, does not find any instance where the revised hours seem unreasonable when compared to the work described. The Court has been in the position to oversee this litigation, including holding the July 2025 conference with the parties (at which the plaintiffs were prepared to present evidence) and presiding over the evidentiary hearing. The Court is convinced that the plaintiffs have met their burden to show that the hours worked were reasonable.

17

The Court also disagrees with Defendants that Plaintiffs' counsel's staffing of the case was unreasonable and resulted in redundancy. Counsel used Ms. Kemp (an associate attorney) for the vast majority of the work here. As Mr. Feher points out, this has the effect of lowering the overall fee. (Feher Aff., ECF No. 75-1, PageID# 699.) And on the flip side of the coin, the fact that Ms. Kemp did most of the day-to-day work on the case makes it reasonable that she attend the important conferences and hearings in the case. This is not unreasonable redundancy.

Regarding subpoenas, the Court again agrees Plaintiffs. Plaintiffs' counsel represents that it has not billed for time related to securing the testimony of internal employees. In this non-solicitation litigation, it was not unreasonable for counsel to wish to interview (or examine under oath, if necessary) the employees of outside entities that Plaintiffs suspect may have been improperly solicited.

And regarding Defendants' arguments about Mr. Feher's expert report, the Court finds the argument unpersuasive. Beyond generally complaining about the cost of the report, Defendants put forth no substantive argument that the plaintiffs are not entitled to fees-on-fees, that is, attorney fees for seeking attorney fees. A fee-shifting provision in a settlement agreement normally allows a court to award fees-on-fees, and the parties' agreement here did as well. *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 629 (6th Cir. 2020) (provision in settlement agreement shifting fees "incurred . . . in prosecuting the Lawsuit" allowed for fees-on-fees). The Court does not find the cost of the report to be unreasonable.

Defendants freely negotiated a fee-shifting provision in the parties' settlement agreement. Defendants then breached the settlement agreement. Defendants then put Plaintiffs to their burden of proof in litigating the breach. Defendants then opposed the plaintiffs' fee application. Having

18

reviewed the work Plaintiffs did to respond to these matters over the course of eight months, the Court is convinced that the work—and the resulting fees—were reasonable.

There is one exception. The Court will disallow Ms. Kemp's request for five hours associated with travel between her office in Columbus and the courthouse in Cleveland for the July 10, 2025 hearing, as well as her hotel, rideshare, and food expenses related to her travel for that hearing and the evidentiary hearing. (*See* Exhibit E, ECF No. 75-12.) The decision whether to compensate counsel for travel time is a matter within this Court's discretion. *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). Here, the plaintiffs chose counsel whose office is located outside the Northern District of Ohio. *See Hahnemann University Hosp. v. All Shore, Inc.,* 514 F.3d 300, 311 (3rd Cir. 2008) (citing *Interfaith Community Organization v. Honeywell Intern., Inc.,* 426 F.3d 694, 710 (3rd Cir. 2005) ("[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel.") While travel time can be compensable under some circumstances, *see Smith v. Service Master Corp.*, 592 F. App'x 363, 372 (6th Cir. 2014), and Ms. Kemp was the primary associate on this case, the Court finds that billing for her travel to Cleveland at her full rate is not consistent with the local practice in this district. Moreover, she did not bill for her travel for the November evidentiary hearing.

For these reasons, the Court calculates the lodestar as follows:

- Ms. Kemp: 65.1 hours at $475 per hour, totaling $30,922.50.

- Mr. Mitchell: 37.8 hours at $690 per hour, totaling $26,082.

- Mr. Jones: 2.4 hours at $130 per hour, totaling $312.

The Court will also allow $5,000 for Plaintiffs' counsel's work in preparing the reply brief, with the understanding that that figure will also reasonably cover counsel's other post-briefing

19

work (communicating with the client regarding the case, reviewing this opinion, and any other work left to be performed) such that there will not be a subsequent fee application. Accordingly, the lodestar amount is **$62,316.50**.

"Upon determining the lodestar, a district court also has discretion to decide whether an upward or downward adjustment is warranted in order to reach a reasonable fee award." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 F. App'x 496, 499–500 (6th Cir. 2011) (citing *Geier v. Sundquist,* 372 F.3d 784, 792 (6th Cir. 2004)).

The Court may consider the following factors when determining whether an adjustment is appropriate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Van Horn*, 436 F. App'x at 499–500 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 430 n. 3 (1983)).

Here, Defendants essentially argue for a downward adjustment because the requested fees dwarf the damages actually at stake in the breach litigation. After careful consideration, the Court is not convinced it is appropriate here to depart from the lodestar amount. Plaintiffs' counsel successfully proved a breach of the settlement agreement after investigation, discovery, conversations regarding settlement, and finally a contested evidentiary hearing. That work, over the course of months, allowed the entry of a consent judgment in their clients' favor, accelerating the payment and increasing the overall judgment amount by $10,000. Defendants have not offered any evidence

20

or caselaw supporting a conclusion that the circumstances present here have led to downward departures in other matters.

Defendants' generalized objections here are insufficient to overcome the "strong presumption" of reasonableness generated by the lodestar method. *See Livingston v. Cavalry Portfolio Servs., LLC*, No. 1:09-CV-384, 2009 WL 4724268, at *2 (N.D. Ohio Dec. 2, 2009), citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Accordingly, the Court awards **$62,316.50** in attorney fees.

## B.    Expenses and Costs

Plaintiffs seek **$10,208.24** in costs and expenses, broken down as follows:

- $7,155 for Mr. Feher's expert opinion regarding the reasonableness of their fees;

- $875.31 for travel costs, mileage, hotel accommodations, and other expenses related to Ms. Kemp's travel for the hearings in the case; and

- $2,177.93 for expenses related to sending subpoenas to potential witnesses ahead of the evidentiary hearing.

Plaintiffs support these requests with: (1) an affidavit from Mr. Mitchell, in which he avers that these expenses were incurred for the reasons stated (ECF No. 75-2, PageID# 713–14); (2) invoices from the company Veritext for services (ECF No. 75-11); and (3) food, lodging, and rideshare confirmation emails, and printed electronic driving directions related to the travel of attorney Lauren Kemp (ECF No. 75-12).

The Court has largely discussed Defendants' objections to these costs above and need not repeat its analysis in detail here. The Court has found it reasonable for Plaintiffs' counsel to have sent subpoenas to potential witnesses at other companies in this non-solicitation case, and it will award costs for those subpoenas. *See also Integrity Energy, Ltd. v. Hunter*, No. 1:18-CV-978, 2021 WL 2808689, at *12 (N.D. Ohio July 6, 2021) (awarding costs for subpoenas issued to obtain

21

"information [the plaintiff] could not compel from Defendants and for records necessary to piece together critical information Defendants withheld"). The Court has reviewed the invoices and awards **$2,177.73** in costs.[6] The Court has found Mr. Feher's work and overall fee to be reasonable. The Court awards **$7,155**. The Court has found Ms. Kemp's requested compensation for costs associated with travel to be unreasonable, and therefore it will not award those costs. Accordingly, the Court awards **$9,332.73** in costs and expenses.

### C.  Principal Settlement Amount Balance

In their opening motion, Plaintiffs stated that Defendants have paid $33,999.98 pursuant to the settlement agreement, to date. (ECF No. 75, PageID# 691.) In the reply brief, the plaintiffs noted that Defendants had made a $3,777.78 payment in January 2026. (ECF No. 78, PageID# 776.) Plaintiffs therefore report that Defendants owe $30,222.24 on the original settlement balance. (*Id.*) Defendants do not address that accounting in their opposition brief or by way of a sur-reply, and they have thus not disputed it.

Plaintiffs state that Defendants also owe an additional $10,000 by virtue of the consent judgment. (ECF No. 75, PageID# 691; ECF No. 78, PageID# 776.) Defendants—in one sentence in their opposition brief—seem to now dispute that. (*See* ECF No. 77, PageID# 769.) Specifically, Defendants argue: "Because the $10,000.00 liquidated damages clauses only applied to violations of the Disparagement and/or Disclosure clauses of the agreement, the claimed $10,000.00 penalty would not apply." (*Id.*)

Perhaps Defendants were just pointing out that penalties in other sections of the settlement agreement would not apply. But to the extent that Defendants are arguing that the additional

---

[6] Invoice number 8597369 was for $386.60, not $386.80 as stated in Mr. Mitchell's affidavit. (Mitchell Aff. at 3, ECF No. 75-2, PageID# 713; Invoice, ECF No. 75-11, PageID# 725.) That minor typographical error is the source of the twenty cent discrepancy between the request and the award.

$10,000 provided for in the *consent judgment* somehow does not apply, the argument has been conceded and is waived. Defendants have never raised the argument to date. Indeed, defense counsel explained as follows at the evidentiary hearing:

> Your Honor, if there is a violation per the settlement agreement, here's what happens: One, my client has to accelerate pay; two, he has to pay $10,000; three, he has to pay reasonable attorney's fees.

(Hrg. Tr. at 32.)

Moreover, the Court has already found that the additional $10,000 payment in the consent judgment applies, and it will not revisit that conclusion in this fee dispute. (*See* Mem. Opinion and Order, ECF No. 74, PageID# 684 ("Plaintiffs shall have and recover judgment against Defendants in the total amount of Sixty-Eight Thousand Dollars ($68,000) minus any payments made pursuant to the Settlement Agreement and Waiver and Release between the parties plus Ten Thousand Dollars ($10,000.00) plus interest at the statutory rate, court costs and reasonable attorney fees.")). Therefore, the Court finds that the remaining principal settlement balance is **$40,222.24**.

The Court is mindful that Defendants may have made an additional payment in February 2026, or they may have made their March 2026 payment. **Thus, Plaintiffs shall file a notice on or before March 5, 2026, stating whether Defendants have made additional payments under the settlement agreement and, if so, the amount of the principal balance that is still outstanding.** The Court would reduce the principal settlement amount accordingly before promptly rendering a final judgment.

### D.  Interest

The final remaining issue concerns prejudgment interest.[7] Plaintiffs request prejudgment interest beginning on January 27, 2025, at a rate of eight percent per annum, pursuant to Ohio

---

[7] The Court will award postjudgment interest pursuant to 28 U.S.C. § 1961, also noting that the parties' consent judgment expressly provides for it. (Consent Judgment, ECF No. 63-1, PageID# 640 ("plus interest

Revised Code §§ 1343.03(A) and 5703.47. Defendants do not address this request in their opposition brief.

The purpose of prejudgment interest is to make an injured party whole by accounting for a delay in compensation. *Capsa Solutions, LLC v. Concord Healthcare Grp.*, No. 2:18-cv-594, 2019 WL 4894038, at *2 (N.D. Ohio Oct. 4, 2019) (citing *Osborn v. Griffin*, 865 F.3d 417, 458 (6th Cir. 2017)). Courts in the Sixth Circuit have permitted prejudgment interest when a party breaches a settlement agreement. *E.g.*, *Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-cv-1298, 2018 WL 1127653, at *4 (N.D. Ohio Mar. 2, 2018); *Pal v. Deliberto*, No. 1:23-cv-1233, 2025 WL 904458, at *6 (N.D. Ohio Mar. 25, 2025).

Where state law claims come before a federal court on supplemental jurisdiction, as they did here, the award of prejudgment interest rests on state law. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 333–34 (6th Cir. 2007). Alternatively, where a court exercises federal question jurisdiction and in the absence of a statutory provision to the contrary, the court has the discretion to award prejudgment interest. *McPherson v. Suburban Ann Arbor, LLC*, 719 F. Supp.3d 759, 766 (E.D. Mich. 2024) (collecting cases).

Ohio Revised Code § 1343.03(A) provides for an award of prejudgment interest "when money becomes due and payable . . . upon any settlement between parties . . . ." The rate is determined pursuant to Section 5703.47 of the Ohio Revised Code. Ohio Rev. Code § 1343.03(A). That section provides that the annual rate is determined annually by the tax commissioner.

---

at the statutory rate"); *see also Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) (postjudgment interest is mandatory). Postjudgment interest is to be calculated in accordance with 28 U.S.C. § 1961(a) (stating that interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.")

24

Plaintiffs are entitled to prejudgment interest, both by operation of Ohio Revised Code § 1343.03 and in this Court's discretion after considering the facts and circumstances of the case, the equity of withholding prejudgment interest, and the fact that the request is not opposed.

However, the statute and the equities of the case provide for prejudgment interest beginning "when money becomes due and payable." Ohio Rev. Code § 1343.03(A). Defendants have not missed a settlement payment. Therefore, the Court will not begin running interest on January 27, 2025, as Plaintiffs request. Instead, the Court determines that interest should run beginning on the date of the breach, when Plaintiffs were entitled to enter the consent judgment, accelerating the payment and causing the entire principal amount to become due and payable.

The Court previously found that Defendants breached the settlement agreement "in and after March 2025" by failing to maintain a complete communication log. (Mem. Opinion and Order, ECF No. 74, PageID# 682.) Therefore, the Court will use March 18, 2025—the date the settlement agreement was fully executed—as the start date for interest. Prejudgment interest will be applied only to the principal settlement balance ($40,222.24 less any additional payments made since the filing of the reply brief).

The statutory interest rate for 2025 was eight percent. Ohio Rev. Code § 5703.47; *see also* Ohio Department of Taxation, *Annual Certified Interest Rates*, https://tax.ohio.gov/researcher/ interest-rates/interest-rates. That rate will apply between March 18, 2025 and December 31, 2025. Assuming no further payments have been made since the filing of the reply brief, the plaintiffs are entitled to $2,686.83 for this period.[8]

---

[8] The Court arrived at this figure this way:

$$0.08 \times \$40,222.24 = \$3,217.77$$
$$305 \text{ days} \div 365 \text{ days} = 0.835$$
$$0.835 \times \$3,217.77 = \$2,686.83.$$

The statutory interest rate for 2026 is seven percent. That rate will apply between January 1, 2026 to the date of the judgment. *See Deliberato*, 2025 WL 904458 at *6. Assuming no further payments have been made since the filing of the reply brief, and assuming that the Court enters its final judgment on March 6, 2026, the plaintiffs are entitled to $501.16 for this period.[9]

Pending the plaintiff's status report and any adjustments necessary to the principal settlement as a result, the Court anticipates awarding prejudgment interest in the total amount of **$3,187.99**.

### III.    CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART the motion for attorney fees, interest, and costs (ECF No. 75.) The Court awards reasonable attorney fees in the amount of **$62,316.50**. The Court awards reasonable costs and expenses in the amount of **$9,332.73**. The Court finds the remaining principal settlement balance, as of the date of the reply brief (ECF No. 78), to be **$40,222.24.**

**The plaintiffs are ordered to file a notice on or before March 5, 2026, stating whether the defendants have made additional payments under the settlement agreement and, if so, the amount of the principal balance that is still outstanding.** The Court will adjust the remaining settlement balance accordingly.

The Court awards prejudgment interest on the principal settlement amount, at the statutory rate. The Court awards postjudgment interest, at the statutory rate, on the entire judgment amount.

---

*See Deliberato*, 2025 WL 904458 at *6 n.5. If additional payments were made, the Court will calculate prejudgment interest on the revised principal settlement amount in the same way.

[9] The calculation is:

$$0.07 \times \$40,222.24 = \$2,815.55$$
$$65 \text{ days} \div 365 \text{ days} = 0.178$$
$$0.178 \times \$2,815.55 = \$501.16$$

The motion is otherwise DENIED. A final judgment entry will follow promptly after the Court receives the notice regarding additional payments.

**IT IS SO ORDERED.**

Dated:  March 3, 2026                    */s Jennifer Dowdell Armstrong*
                                          JENNIFER DOWDELL ARMSTRONG
                                          UNITED STATES MAGISTRATE JUDGE